# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEAH FILIPKOSKI,<br><br>        Plaintiff,<br><br>v.<br><br>SCHIFF'S RESTAURANT SERVICE, INC.,<br><br>        Defendant. | JURY TRIAL DEMANDED<br><br>Civ. No. _____ |

## **COMPLAINT**

Plaintiff, Leah Filipkoski ("Plaintiff"), by and through her counsel, Mobilio Wood, files the instant Complaint against Defendant, Schiff's Restaurant Service, Inc. ("Defendant"), averring in support thereof as follows:

## **Introduction**

1. This cause of action arises out of Plaintiff's former employment with Defendant.

2. Plaintiff asserts claims and seeks monetary damages for hostile work environment, retaliation, and constructive discharge, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").

## Parties

3. Plaintiff is an adult individual and citizen of the Commonwealth of Pennsylvania, and is a former employee of Defendant.

4. Defendant is a Pennsylvania corporation headquartered at 3410 N. Main Ave., Scranton, Pennsylvania 18508.

5. At all times relevant and material herein, Defendant acted by and through its ostensible and/or actual agents, servants, workmen and/or employees.

## Jurisdiction and Venue

6. This Court has jurisdiction over Plaintiff's claims in accordance with 28 U.S.C. § 1331 because this civil action arises under a law of the United States and seeks redress for violations of a federal law.

7. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this Commonwealth and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

8. Venue is properly laid in this judicial district pursuant to 28 U.S.C. § 1391, as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendant is subject to personal jurisdiction in this district.

## Exhaustion of Administrative Remedies

9. On or around September 28, 2022, Plaintiff dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") against Defendant, alleging that Defendant unlawfully discriminated against her on the basis of her sex, and retaliated against her for engaging in protected activity, in violation of Title VII, and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951 *et seq.* ("PHRA").

10. On October 25, 2022, the EEOC issued a Notice of Right to Sue to Plaintiff.[1]

## Factual Allegations

**A. Plaintiff is Subjected to Continuous Sexual Harassment and Misogynistic Insults**

11. Plaintiff's sex is female.

12. Plaintiff was hired by Defendant as a deli supervisor in or around December 2019.

---

[1] Plaintiff intends to file a motion for leave to amend the instant Complaint to assert claims for violation of the PHRA against Defendant following the expiration of 12 months from the date on which she dual-filed her Charge of Discrimination with the PHRC.

3

13. At the time of her hire, Plaintiff was the only female supervisor employed in Defendant's deli, and worked alongside four (4) male co-supervisors.

14. Plaintiff was not provided with a sufficiently detailed anti-harassment policy, and she was not required to undergo any form of anti-harassment training.

15. Beginning in or around early-2022, and continuing through her constructive discharge described herein, Plaintiff was subjected to an escalating campaign of unwanted sexual advances by one of Defendant's male dishwasher employees, Matthew Matassa ("Matassa").

16. Matassa's harassment of Plaintiff included, but was not limited to, the following:

   a) Approaching Plaintiff from behind, and wrapping his arms around her without her consent;

   b) Touching and grabbing Plaintiff's waste and/or legs without her consent;

   c) Following Plaintiff outside of Defendant's premises after her shifts, and repeatedly attempting to walk Plaintiff to her car; and

   d) Sending repeated sexually explicit text messages to Plaintiff.

17. Matassa's harassment was constant, and his unwanted fondling of Plaintiff often occurred in the presence of her male co-supervisors, including co-

4

supervisor Harry Mucovic ("Mucovic"), as well as her male department manager, David Pitcavage ("Pitcavage").

18. Pitcavage is also a part-owner of Defendant, and serves as Defendant's Vice President.

19. Neither Pitcavage nor Mucovic took any corrective action against Matassa when they observed him grope Plaintiff.

20. Plaintiff advised Pitcavage and Mucovic that Matassa's unwanted touching was making her uncomfortable, but they both refused to intervene.

21. Moreover, not only did Mucovic turn a blind eye to Matassa's sexual assaults, but he continually advised Plaintiff that "women don't need to be in positions of power," and repeatedly told Plaintiff that she was a "piece of shit" and was "fucking pathetic."

22. Similarly, Pitcavage often made sexually-charged comments and told sexual jokes regarding females.

23. In addition to the persistent harassment endured by Plaintiff, she was paid less than her male co-supervisors.

24. More specifically, Defendant provided Plaintiff's male co-supervisors with formal annual performance reviews, which resulted in the male co-supervisors receiving pay raises.

5

25. To the contrary, Plaintiff was never given an annual performance review.

26. Along these lines, Defendant provided Plaintiff and her male co-supervisors with holiday bonuses during the Christmas season each year; however, Defendant paid Plaintiff's male co-supervisors significantly higher bonuses than Plaintiff.

**B.  Plaintiff Voices Repeated Complaints About the Ongoing Sexually Hostile Work Environment, but Her Complaints are Ignored, and the Harassment Intensifies**

27. In or around late-April 2022, after Matassa's unsolicited sexually-charged text messages to Plaintiff increased in frequency, Plaintiff contacted Defendant's Human Resources director, Kris Krahling ("Krahling"), and attempted to file a complaint about Matassa's ongoing harassment.

28. Plaintiff explained that Matassa had been groping her in the workplace, and showed Krahling a number of explicit text messages that Matassa had sent to her.

29. Plaintiff stated that she wanted to make a formal complaint, in writing, against Matassa.

30. Krahling, however, advised Plaintiff that it was his last week of employment with Defendant, that he was no longer Defendant's Human Resources

6

director and instead was just "helping out" for the day, and that Defendant did not yet have a replacement selected for him.

31. Krahling suggested that Plaintiff report her complaint to her department manager/Defendant's Vice President, Pitcavage, as well as her co-supervisor, Mucovic.

32. Plaintiff thereafter met with Pitcavage and Mucovic and once again advised them that Matassa's unwanted advances were making her uncomfortable, and stated that she desired to make a complaint in writing against Matassa.

33. Once again, no corrective action was taken against Matassa, and Matassa continued his harassment.

34. Specifically, on or around the evening of Sunday, April 24 into the morning of Monday, April 25, Matassa sent a series of unsolicited, sexually-charged text messages to Plaintiff, which stated as follows:

> Hey
>
> So I had a dream about you and me
>
> Ya wanted to see my dick and ya wanted to suck it
>
> I'm not trying to be a weirdo I mean I do kinda fuck you
>
> I mean ya have a beautiful body I'm not gonna lie
>
> Leah did I creep you out
>
> Can I send you a picture of my dick you tell me what you think

7

> I kinda love you so much
>
> I kinda want to see ya amazing body please ya can ya bra and underwear on please cutie [heart emoji]
>
> Ya ok
>
> I am I just think you really hot
>
> Here I know you miss this face
>
> [Photo of Matassa's face]

(A true and correct copy of Matassa's April 24-25 text message exchange is attached hereto as **Exhibit "A"**).

## C. Defendant Retaliates Against Plaintiff and Demotes Her Within Days of Her Sexual Harassment Complaint, Leading to Plaintiff's Constructive Discharge

35. In late-April 2022, several days after Plaintiff's sexual harassment complaints to Krahling, Pitcavage and Mucovic, Pitcavage summoned Plaintiff to his office, and abruptly stated, "I think it's time for us to cut ties."

36. Pitcavage explained that Defendant had decided to terminate Plaintiff's employment.

37. Plaintiff was shocked, and asked Pitcavage for the reason for her sudden termination.

38. Pitcavage responded, "I don't have to tell you that."

8

39. Plaintiff persisted, and Pitcavage eventually claimed that Plaintiff had been issued a write-up for tardiness, which was the purported reason for her termination, but he would not let Plaintiff view the write-up.

40. Plaintiff left Pitcavage's office, but returned several minutes later in an attempt to protest her termination.

41. Pitcavage began screaming at Plaintiff, and yelled, "I'm the manager, and I don't want you in my department."

42. Pitcavage then stated that if Plaintiff did not want to be terminated, she could instead accept a transfer to an entry-level cashier position.

43. The entry-level cashier position was slated to pay substantially less than Plaintiff's supervisor position, and would strip Plaintiff of her supervisory responsibilities.

44. Soon after her meeting with Pitcavage, Plaintiff emailed Defendant's President, Mark Reese, and Reese's son, Adam Reese – both males – to complain about Matassa's sexual harassment, as well as Pitcavage's attempted termination and retaliatory demotion.

45. Adam Reese responded via email and initially noted that he did not see any written records regarding any of Plaintiff's previous sexual harassment complaints.

9

46. Adam Reese then confirmed that if Plaintiff wished to remain employed, her only option was to accept a demotion to the cashier position, forfeit her supervisory responsibilities, and report to a new supervisor:

> While we have transferred you to a different department and you unfortunately had to miss a few days, I want to assure you that you still have a job. I spoke with Latasha (your new supervisor) and she said that she has you on the cashier's schedule and your next shift is tomorrow, April 28, 2022 starting at 12:00 p.m. We will see you then.

47. Plaintiff is a single mother, and the lower-paying cashier position would not have been sufficient for Plaintiff to financially provide for herself and her family.

48. Plaintiff felt that she had no choice but to resign, and did in fact resign.

49. Upon information and belief, Plaintiff's harasser, Matassa, is still employed by Defendant.

## COUNT I

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964:
HOSTILE WORK ENVIRONMENT**

50. Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

51. Plaintiff was an "employee" as defined by 42 U.S.C. § 2000e(f).

10

52. Defendant was Plaintiff's "employer" within the meaning of 42 U.S.C. § 2000e(b), and employed 15 or more persons.

53. Title VII provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1).

54. Throughout the course of Plaintiff's employment, she was subjected to unwelcomed harassment by her coworkers, Matassa and Mucovic, as well as by her department manager and supervisor, Pitcavage, due to her sex.

55. The harassment endured by Plaintiff was severe and pervasive.

56. The harassment endured by Plaintiff detrimentally affected her, and would have detrimentally affected a similarly situated reasonable person.

57. Matassa's and Mucovic's harassment of Plaintiff occurred openly and in the presence of Plaintiff's department manager and supervisor, Pitcavage, who also served as Defendant's Vice President.

58. Pitcavage himself contributed to the sexually hostile work environment to which Plaintiff was subjected.

59. Plaintiff complained to Pitcavage, Mucovic, and Defendant's human resources director, Krahling, about Matassa's sexual harassment.

11

60. Defendant either was aware, or should have been aware, of the harassment inflicted on Plaintiff, but failed to take appropriate corrective action against any of Plaintiff's harassers, rendering Defendant liable for the harassment.

61. Moreover, Defendant's employee handbook contained an inadequate anti-harassment policy, in that the policy did not specify the manner in which harassment complaints could be made (*i.e.*, verbal vs. written), did not identify the names, phone numbers, email addresses, and/or locations of Defendant's representatives to whom harassment complaints could be reported, and did not even affirmatively require employees or managers to report instances of harassment that they observed.

62. Further, Defendant failed to train its employees or managers about how to identify, deal with, and report sexual harassment.

63. Further still, Defendant allowed Plaintiff's fellow supervisors and department manager to openly make discriminatory remarks about females, fostering an atmosphere where a reasonable employee would be reluctant to complain about harassment.

64. Defendant therefore failed to provide a reasonable avenue for Plaintiff to complain about harassment, additionally rendering Defendant liable for Plaintiff's harassment.

65. The harassment endured by Plaintiff, including the harassment inflicted by Plaintiff's department manager and supervisor, Pitcavage, resulted in Plaintiff's constructive discharge.

66. Because Pitcavage's harassment of Plaintiff culminated in a tangible adverse employment action, Defendant is strictly liable for Pitcavage's conduct.

67. Through its conduct, Defendant violated Title VII.

68. Defendant acted with reckless indifference to Plaintiff's rights under federal law, warranting an award of punitive damages.

69. As a result of Defendant's conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, anguish, personal hardship, career and social disruption, and psychological and emotional harm.

## COUNT II

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964: RETALIATION**

70. Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

71. Title VII provides that it is an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a).

13

72. Plaintiff filed several good-faith complaints to Mucovic and Pitcavage about Matassa's harassment.

73. In late-April 2022, Plaintiff again complained in good faith to Mucovic and Pitcavage, as well as to Defendant's human resources manager, Krahling, about Matassa's harassment.

74. Within days of Plaintiff's April 2022 harassment complaints, Defendant initially terminated Plaintiff's employment, and then advised her that if she wished to remain employed, her only option was to accept a demotion to a lower paying entry-level cashier position.

75. Defendant's stated basis for Plaintiff's demotion was that Plaintiff had been issued a write-up for tardiness.

76. Plaintiff's male colleagues frequently arrived tardy to their shifts, but were not disciplined.

77. Upon being faced with a demotion to an entry-level cashier position, and further in light of the ongoing sexually hostile work environment, Plaintiff felt that she had no choice but to resign.

78. Plaintiff's resignation constitutes a constructive discharge.

79. Through its conduct, Defendant violated Title VII.

80. Defendant acted with reckless indifference to Plaintiff's rights under federal law, warranting an award of punitive damages.

14

81. As a result of Defendant's conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, anguish, personal hardship, career and social disruption, psychological and emotional harm, and lost wages.

### COUNT III

### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964: CONSTRUCTIVE DISCHARGE

82. Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

83. Defendant knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.

84. Based on Defendant's above-described conduct, Plaintiff felt that she had no choice but to resign, and did in fact resign.

85. Plaintiff's resignation constitutes a constructive discharge.

86. Through its conduct, Defendant violated Title VII.

87. Defendant acted with reckless indifference to Plaintiff's rights under federal law, warranting an award of punitive damages.

88. As a result of Defendant's conduct, Plaintiff has been harmed.

### Prayer for Relief

**WHEREFORE**, Plaintiff prays that a judgment be entered in her favor and against Defendant in the following respects:

a) An order awarding back pay, front pay, compensatory damages for emotional distress, and punitive damages on Counts I-III;

b) An order awarding attorneys' fees and expenses on Counts I-III pursuant to 42 U.S.C. § 2000e-5(k);

c) An order awarding pre-judgment and post-judgment interest; and

d) All other relief as the Court deems just and equitable.

## Jury Demand

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

Date: 10/27/2022  BY: */s/ Peter C. Wood, Jr.*
Peter C. Wood, Jr., Esq. (ID No. 310145)
**MOBILIO WOOD**
900 Rutter Ave., Box 24
Forty Fort, PA 18704
Phone: (570) 234-0442
Fax: (570) 266-5402
peter@mobiliowood.com

*Counsel for Plaintiff Leah Filipkoski*

16